**UNITED STATES of America, Appellee,**

v.

**Daniel Joseph AGUILERA, Appellant.**

No. 94–2834.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1995.

Decided Feb. 23, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied March 31, 1995.

Julie A. Frank of Omaha, NE, argued, for appellant.

Douglas Richard Semisch, Asst. U.S. Atty., Omaha, NE, argued, for appellee.

Before LOKEN, Circuit Judge, GODBOLD,* Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Daniel Aguilera pleaded guilty in federal district court to making false statements on a credit application in violation of 18 U.S.C. § 1014. In addition to the term of imprisonment of 27 months and the five-year term of supervised release following release from prison, Aguilera was ordered to pay the costs of his supervised release and restitution in the amount of $16,667.77. He now appeals from his sentence and we affirm.[1]

## I.

Aguilera attacks the district court's imposition of a fine representing the costs of supervised release under U.S.S.G. § 5E1.2(i). We review the district court's application of the Guidelines de novo. *United States v. Wilson,* 41 F.3d 399, 401 (8th Cir.1994).

At sentencing, the court adopted the Presentence Report ("PSR"), noting that there were no objections to its factual findings. Tr. at 4. The court considered the defendant's ability to pay a fine and stated that a lump sum cash fine under U.S.S.G. § 5E1.2(c) was not imposed because the de-

fendant did not have the ability to pay such a fine in addition to the cost of supervised release and restitution. *Id.* at 17–18. The court found that Aguilera should nevertheless be able to pay the costs of supervised release after leaving prison. *Id.* at 18. Upon pronouncing sentence, Aguilera's counsel asked for reconsideration of the fine, noting that the statutory language provides that it was supposed to be an "additional" fine, and also arguing that Aguilera would not have the ability to pay a such a fine. The court responded:

> Well, that request is denied. I realize that some take the position that if you don't impose a fine, ... you can't impose upon the defendant the costs of his supervised release. I disagree with that viewpoint. . . . I could impose a $10.00, I suppose, cash fine or a $100.00 fine and then that would have the effect, it would seem to me, of making then the imposition of the cost of the supervised release permissible. I take it that would satisfy those with that viewpoint, and I don't think that is what the law intended or what it required, but we will find out perhaps.

*Id.* at 19.

Aguilera contends that a district court can assess an "additional" fine for costs under U.S.S.G. § 5E1.2(i) only if it first assesses a punitive fine under § 5E1.2(c). *See United States v. Pineda,* 981 F.2d 569, 576 (1st Cir.1992); *United States v. Fair,* 979 F.2d 1037, 1042 (5th Cir.1992); *United States v. Labat,* 915 F.2d 603, 607 (10th Cir.1990). These cases adhere to the view that the language of 5E1.2(i) requires this result:

> Notwithstanding of the provisions of subsection (c) of this section [the table of minimum and maximum fines], but subject to the provisions of subsection (f) herein [giving relief if defendant can show that he is not able to pay the fine], the court shall impose an additional fine amount that is at least sufficient to pay the costs to the government of any imprisonment, probation, or supervised release ordered.

* The HONORABLE JOHN C. GODBOLD, United States Senior Circuit Judge for the Eleventh Circuit Court of Appeals, sitting by designation.

1. The Honorable William G. Cambridge, United States District Judge for the District of Nebraska.

U.S.S.G. § 5E1.2(i). The word "additional" in this Guideline, according to the cases cited above, requires that a punitive fine under 5E1.2(c) must have been imposed initially.

■ We respectfully disagree with the reasoning of these cases. As the district court noted, it makes little sense to impose a token punitive fine under 5E1.2(c) merely to be able to impose a fine representing the government's costs. The cases cited above compel the court, if it imposes a fine of $1 under 5E1.2(c), to add a fine for incarceration, yet if no punitive fine is levied the defendant cannot be committed to pay the costs of incarceration. We do not think that the Sentencing Commission could have possibly intended such a result. If one needs a technical argument to support this common-sense conclusion, one could say that the imposition of a fine in the amount of zero dollars furnishes the required statutory predicate for an "additional" fine compensating the government for the costs of supervision. *See United States v. Sellers,* 42 F.3d 116, 119 (2d Cir.1994); *United States v. Favorito,* 5 F.3d 1338, 1340 (9th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1374, 128 L.Ed.2d 50 (1994); *United States v. Turner,* 998 F.2d 534, 538 (7th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 639, 126 L.Ed.2d 598 (1993).

■ A less technical argument in support of the district court's holding can be premised on the observation that the Guidelines require that "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a). Conceptually, therefore, in every case the district court should select a fine under § 5E1.2(c), decide whether to add a costs fine under § 5E1.2(i), and then appropriately reduce the total fine for inability to pay under § 5E1.2(f). *Turner,* 998 F.2d at 538. Under this scheme the characterization of the costs fine as an "additional" fine makes perfect sense. We conclude therefore that the district court did not err in imposing a fine under 5E1.2(i) without imposing a fine under 5E1.2(c).

■ Aguilera also maintains that the Guidelines were incorrectly applied in his case because the PSR does not support the imposition of any fine at all. The PSR states that in light of "defendant's debt and the extent of his restitution obligation, a fine would appear to be extraordinarily difficult." PSR ¶ 98. It also notes that, subject to the defendant's ability to pay, the court shall impose a fine that is at least sufficient to pay the cost to the government of any supervised release, which currently amounts to $180.90 per month. *Id.* ¶ 109. The PSR indicates that Aguilera had previously earned as much as $1200 per month. PSR ¶ 89. While a district court is required to make specific findings on the record that it has considered the defendant's ability to pay, in light of the defendant's capacity, and the burden that the fine places on him (*Lincoln v. United States,* 12 F.3d 132, 133 (8th Cir.1993) (per curiam); *United States v. Cammisano,* 917 F.2d 1057, 1064 (8th Cir.1990); *United States v. Walker,* 900 F.2d 1201, 1206 (8th Cir.1990) (per curiam)), it need not itself set forth a detailed analysis of the defendant's financial position, but may rely on the information contained in the PSR. *See Lincoln,* 12 F.3d at 133. As we noted, the district court specifically adopted the facts in the PSR, and found that while Aguilera did not have the ability to pay such a fine in addition to the cost of supervised release and restitution, he should be able to pay the costs of supervised release once he leaves prison and finds employment. Tr. at 17–18. These findings are sufficient under our cases.

## II.

■ Aguilera argues that in promulgating 5E1.2(i) the Sentencing Commission exceeded its authority. Aguilera did not, however, raise this issue before the district court at sentencing. The procedural posture of this issue is precisely the same as that in *United States v. Prendergast,* 4 F.3d 560 (8th Cir. 1993) (per curiam), where we were asked to rule that 5E1.2(i) exceeded the Sentencing Commission's authority. Because the issue had not been raised below, *Prendergast* reviewed the issue under the plain error rule, *id.* at 560–61 (citing *United States v. Olano,* — U.S. —, —, 113 S.Ct. 1770, 1776–78, 123 L.Ed.2d 508 (1993); *United States v.*

*Montanye,* 996 F.2d 190, 192 (8th Cir.1993) (en banc)), and concluded that the error, if any, did not "seriously affect 'the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *Montanye,* 996 F.2d at 192). We are bound by that determination and for that reason we reject Aguilera's argument that 5E1.2(i) exceeds the Sentencing Commission's authority.

### III.

Aguilera's PSR revealed six convictions for operating a motor vehicle while his driving license was suspended and one conviction for a writing a bad check. PSR ¶¶ 56–61. Defendant objects that these prior offenses were counted separately, and urges that they instead be deemed "related cases."

■ The Guidelines require that prior sentences imposed in unrelated cases be counted separately, and that prior sentences in related cases be treated as a single sentence. U.S.S.G. § 4A1.2(a)(2). The Guidelines provide the following definition of related cases:

> Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (*i.e.,* the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing.

U.S.S.G. § 4A1.2, comment. n. 3. The district court concluded that the prior offenses were not related cases because "although the cases out of which some convictions arose were consolidated for sentencing purposes, they were separated by intervening arrests." Tr. at 2.

■ Here, there is no dispute that the offenses described in paragraphs 56 through 61 of the PSR involved separate arrests. Although these matters were consolidated for sentencing, that fact fails to change the analysis. The Guidelines require us to consider the offenses unrelated if they were for offenses that were separated by an intervening arrest. Only otherwise, that is, if there had

been a single arrest for multiple offenses, would the Guidelines require us to inquire whether sentencing was consolidated. *Accord United States v. Gallegos–Gonzales,* 3 F.3d 325, 327 (9th Cir.1993); *United States v. Hallman,* 23 F.3d 821, 825 (3d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 216, 130 L.Ed.2d 144 (1994). The arrests were separate and the offenses were correctly given separate weight.

### IV.

For the foregoing reasons, the judgment of the district court is affirmed.

GODBOLD, Senior Circuit Judge, concurring in part and dissenting in part.

I agree with parts II and III of the opinion of the court. I am not able to agree with the conclusion that a district court can assess an "additional" fine for costs under U.S.S.G. § 5E1.2(i) though no punitive fine has been assessed under § 5E1.2(c). I would follow the decisions, mentioned in the majority opinion, of the Tenth, First and Fifth circuits, *U.S. v. Labat,* 915 F.2d 603, 607 (10th Cir.1990), *U.S. v. Pineda,* 981 F.2d 569, 576 (1st Cir.1992), and *U.S. v. Fair,* 979 F.2d 1037, 1042 (5th Cir.1992) (relying on "the plain language" of § 5E1.2(i)), and now the Eleventh Circuit, *U.S. v. Norman,* 3 F.3d 368, 369–70 (11th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1102, 127 L.Ed.2d 414 (1994), holding that no cost-fine can be imposed where there has been no punitive fine. *See also U.S. v. Corral,* 964 F.2d 83, 84 (1st Cir.1992) ("If defendant cannot pay a punitive fine, there is no basis for expecting that he will be able to pay for the expenses of supervised release. Imposition of such a sanction would be meaningless and result in unnecessary record-keeping."). In *Pineda* the defendant did not raise the issue; the government suggested the error, and the court agreed with that suggestion.

In *Labat* the Tenth Circuit relied upon both the ground of simple logic and a plain reading of the language of § 5E1.2, plus the dictionary meaning of "additional," plus the Sentencing Commission's own explanation.

Mr. Labat's two-step reading of the guidelines, however, makes sense both on grounds of simple logic and a plain reading of the language of this section.[6] Under § 5E1.2, a fine must be imposed unless subparagraph (f) is satisfied. Although (f) is not mandatory, it makes no sense to waive the punitive fine and impose the '*additional*' fine.

Indeed, a fine is a fine,[7] and if a defendant is indigent for purposes of one, he must be indigent for purposes of the other. Moreover, fundamental semantics dictates that a subparagraph (i) fine cannot be 'additional,' unless it augments another fine. The guideline simply permits no other reading. Unfortunately, the district court seemingly gave no consideration to the language of subparagraph (i) and, as a result, misapplied § 5E1.2 of the guidelines.

*Labat*, 915 F.2d at 605.

It seems to me to make evident—and commendable—sense for the Sentencing Commission to have thought that if a defendant is indigent and unable to pay a punitive fine he is also unable to pay a cost-fine. The Commission may have viewed imposition of a punitive fine as a threshold matter to be given first consideration, with eligibility for a cost-fine to have a field of operation only when the threshold has been passed. Moreover, it is not for us to second guess the Sentencing Commission and confect what judges think is a common sense conclusion, when the Commission may have thought otherwise and appears to have thought otherwise. One must note the irony that this court says its view is the "common sense" conclusion, while *Labat* thought the contrary view was "simple logic." In that situation I would follow what the Commission has said rather than speculating that it could not possibly have meant what it said, and, if we are wrong, the Commission could straighten it out.

It is suggested that a punitive fine of zero dollars, which, of course, is not a fine, supports an "additional" fine because additional means adding two numbers together and zero is a number. See *U.S. v. Turner*, 998 F.2d 534 (7th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 639, 126 L.Ed.2d 598 (1993), from which this was unearthed. *The New Yorker* of a quieter and gentler time would have had a field day with this exercise of "The Legal Mind At Work," as would Noah Webster.

---

**6.** 'Additional' is defined as 'existing or coming by way of addition.' *Webster's Third International Dictionary*, p. 24 (1981).

**7.** *See* The Sentencing Commission's 'Questions Most Frequently Asked About The Sentencing Guidelines,' Question # 24:
  Is the cost of imprisonment and supervision considered a fine?
  Answer: Yes. The guidelines provide that the court shall order a fine within the guideline fine range and the court 'shall impose an *additional fine amount* that is at least sufficient to pay the cost to the government of any impris-

onment, probation, or supervised release ordered' (emphasis added). Of course, the guideline fine and the costs of imprisonment/supervision fine cannot total more than the maximum fine provided by statute. (*See* § 5E1.2(i).)
We note this publication contains the disclaimer that the information does not 'necessarily represent the official position of the Commission, should not be considered definitive, and is not binding upon the Commission, the court or the parties in any case.'