—————

No. 95-3026

—————

United States of America,          *
                                   *
    Plaintiff - Appellee,          *
                                   *   Appeal from the United States
    v.                             *   District Court for the
                                   *   Western District of Missouri.
Robert E. Hines,                   *
                                   *
    Defendant - Appellant.         *

—————

Submitted:  February 13, 1996

Filed:  July 10, 1996

—————

Before BOWMAN, LOKEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

—————

LOKEN, Circuit Judge.

Robert E. Hines pleaded guilty to drug and firearm offenses. The district court sentenced him to ninety months in prison and three years of supervised release. The court also imposed a fine of approximately $300,000, based upon the fact that Hines will receive $1,550,000 in personal injury settlement payments over the next thirty-five years. Hines appeals this fine. We conclude that, while the fine is not constitutionally excessive, the district court erred in refusing to consider "the burden that the fine will impose upon . . . any person who is financially dependent on the defendant," namely, Hines's new wife and stepson. 18 U.S.C. § 3572(a)(2); see U.S.S.G. § 5E1.2(d)(3). Accordingly, we reverse and remand for resentencing.

Hines was charged with possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d), possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and

(b)(1)(C), and use of a firearm in relation to drug trafficking in violation of 18 U.S.C. § 924(c).  On November 27, 1993, two days before his arrest on those charges, Hines married, acquiring a stepson in the process. He pleaded guilty to all three counts in February 1994 and was sentenced in August 1995.

In 1986, Hines was hit by a truck, sustaining injuries that left him 23% permanently disabled.  He settled his personal injury claim in 1989. At the time of sentencing, the following "Deferred Lump Sum Payments" remained to be paid under this settlement:

| February 12, 1997 -- $ 25,000 | February 12, 1999 -- $ 25,000 |
|---|---|
| 2002 -- $ 50,000 | 2004 -- $ 50,000 |
| 2007 -- $ 50,000 | 2009 -- $ 50,000 |
| 2012 -- $105,000 | 2014 -- $105,000 |
| 2017 -- $105,000 | 2019 -- $105,000 |
| 2022 -- $220,000 | 2024 -- $220,000 |
| 2027 -- $220,000 | 2029 -- $220,000 |

The settlement agreement provides that Hines may not accelerate, increase, or decrease the deferred payments.  It also states:  "To the extent provided by law, the aforesaid deferred lump sum payments shall not be subject to transfer . . . or encumbrance."

At sentencing, the district court advised that it intended to take these future payments into account in imposing an appropriate fine.  The government urged that the fine be payable immediately because Hines will not receive the bulk of the settlement proceeds for more than twenty years, but the court may only require installment payments of a fine for five years, and the government's lien securing the payment of a fine expires in twenty years (unless Hines agrees to a longer term).  See 18 U.S.C. §§ 3572(d), § 3613(b).[1]  Counsel for Hines argued that the court must consider

---

[1]These limitations were repealed by section 207 of the Antiterrorism and Effective Death Penalty Act of 1996, for convictions after the effective date of that Act.  See Pub. L. No. 104-132, § 207, 110 Stat. 1214, 1236-39 (1996).

the needs of Hines's new wife and stepson.  The court responded that responsibilities Hines took on after the charges were brought "cannot be of any concern to me."

The court imposed a fine of $150,000 plus incarceration costs of $1734 per month.[2]  The court made the entire fine payable immediately. Thus, the government will be entitled to the full amount of each deferred settlement payment until the year 2012, some ten years after Hines is released from prison.  On appeal, Hines challenges the amount of the fine, and the fact that its terms of payment leave his wife and stepson with no financial support during his incarceration.  He notes that his wife recently lost her job, his stepson has large medical bills, and the settlement payments will average only $12,500 per year until 2002.  He further argues that the fine is excessive under the Eighth Amendment -- it is "ten time greater than the largest fine imposed in the Western District of Missouri at any time from the commission of his criminal conduct to the date of sentencing."

"[T]he Guidelines require that '[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine.'  U.S.S.G. § 5E1.2(a)." United States v. Aguilera, 48 F.3d 327, 329 (8th Cir.), cert. denied, 116 S. Ct. 117 (1995).  The Guidelines further require that, "[i]n determining the amount of the fine, the court shall consider" a number of factors, including "the burden that the fine places on the defendant and his dependents relative to alternative punishments."  U.S.S.G. § 5E1.2(d)(3). Hines has a legal obligation to support his wife and stepson.  See Tyron v. Casey, 416 S.W.2d 252, 260 (Mo. App. 1967) (husband must support

---

[2]The parties estimate these additional costs at about $150,000.  The court explained its decision by noting that the settlement provided Hines with income of $40,000 per year for forty years, and the total fine of some $300,000 is approximately $40,000 for each year of Hines's incarceration.

his wife); Mo. Rev. Stat. § 453.400(1) (stepparent must support stepchild living in the home to the same extent as a natural or adoptive parent). The Guidelines make no distinction based upon when dependents were acquired, nor the length of the dependent relationship.[3] The district court erred in ignoring this mandatory sentencing factor. See Aguilera, 48 F.3d at 328 (application of the Guidelines is reviewed *de novo*); United States v. Bauer, 19 F.3d 409, 412-13 (8th Cir. 1994).

Accordingly, we must remand for resentencing. Because few cases discuss the imposition of fines under the Guidelines, or the impact of the Eighth Amendment prohibition on "excessive fines," we add the following comments concerning these sentencing issues.

First, we are concerned that the record does not permit a comparison between the amount of the immediately payable fine and Hines's present ability to pay a fine. If the fine were deferred in the same manner as the settlement payments, then we could compare $300,000 to $1,550,000 in determining Hines's ability to pay and the impact of the fine on his dependents. But Congress does not allow long-deferred fine obligations, and it only provides the government a twenty-year lien, so the district court made the fine payable immediately. Obviously, that term makes the fine, in the short run, greatly exceed Hines's ability to pay.

To determine the appropriate level of a payable immediately fine under the Guidelines, the court needs to determine the present value of the deferred payment stream. This is relevant because Hines may be required to liquidate this right to future income (or any other illiquid asset) to meet his obligation to pay an appropriate fine. The question is complicated here by the anti-alienation and anti-encumbrance provisions of the settlement

---

[3]The government makes no showing that Hines married with the intent to avoid imposition of a fine.

agreement. But in exploring the present value of the deferred payments, the district court may learn that these provisions are not a complete obstacle to realizing that present value. And of course, if Hines were to refuse either to take available steps to realize the present value of this asset, or to enter into an agreement with the government extending the life of its lien, the court should take that into account in balancing the competing needs of his dependents, or in fashioning appropriate alternative sanctions.

Second, we are concerned that the terms of the fine and the conditions of Hines's supervised release have not been properly integrated. The standard Judgment and Commitment Order used in the Western District of Missouri provides: "Unless otherwise ordered by the court, any financial penalty imposed by this order shall be due and payable during the period of incarceration, with any unpaid balance to be a condition of supervised release." Violation of a condition of supervised release allows the court to revoke supervised release and impose further sanctions, including an additional term in prison. See 18 U.S.C. § 3583(e). Therefore, it is an abuse of discretion to impose as a condition of supervised release the immediate payment of a fine if the defendant's ability to pay that fine is based upon post-supervised release income.[4]

Finally, we reject Hines's contention that the fine imposed violates the Eighth Amendment command that "[e]xcessive bail shall not be required, nor excessive fines imposed . . . ." There are few cases interpreting the Excessive Fines Clause. Supreme Court decisions suggest that the determination of excessiveness should be based, at least in part, on whether the fine is disproportionate to the crime. See Alexander v. United States, 113 S. Ct. 2766, 2775

---

[4]A defendant may not constitutionally be incarcerated solely because he cannot pay a fine through no fault of his own. See Bearden v. Georgia, 461 U.S. 660, 672-73 (1983); Lincoln v. United States, 12 F.3d 132, 133 (8th Cir. 1993) (per curiam).

(1993); <u>Harmelin v. Michigan</u>, 501 U.S. 957, 1009 (1991) (White, J., dissenting).  We require proof of "gross disproportionality," an excessiveness so great that "the punishment is more criminal than the crime."  <u>United States v. Alexander</u>, 32 F.3d 1231, 1235, 1237 (8th Cir. 1994).  <u>See</u> <u>United States v. Bieri</u>, 68 F.3d 232, 236 (8th Cir. 1995), <u>cert. denied</u>, 116 S. Ct. 1876 (1996).

The above cases involved forfeitures, not monetary fines. Proportionality is likely to be the most important issue in a forfeiture case, since the claimant-defendant is able to pay by forfeiting the disputed asset.  In imposing a fine, on the other hand, ability to pay becomes a critical factor.  But the Guidelines mandate that this factor be considered, <u>see</u> § 5E1.2(d)(2) and (f), and if the sentencing court complies with these provisions, any constitutional ability-to-pay limitation will necessarily be met.  Here, for example, the amount of the fine, $150,000, is well within the statutory maximum of $1 million.  <u>See</u> 21 U.S.C. § 841(b)(1)(C).  It is consistent with the Guidelines, <u>see</u> U.S.S.G. § 5E1.2(c)(4), and the additional fine for Hines's costs of incarceration is specifically authorized and clearly proportional to his crimes.  <u>See</u> 18 U.S.C. § 3572(a)(6); U.S.S.G. § 5E1.2(i); <u>United States v. Price</u>, 65 F.3d 903, 908 n.7 (11th Cir. 1995), <u>cert. denied</u>, No. 95-1579, 64 U.S.L.W. 3670 (Jun. 24, 1996).  Thus, when the district court properly considers the factors prescribed in § 5E1.2(d) on remand, the fine it imposes will not be constitutionally excessive.

The judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-6-